UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROYAL SUN ALLIANCE INSURANCE PLC,

                              Plaintiff,                    09 CV 5586 (RPP)
            - against -

                                                **OPINION AND ORDER**

TA OPERATING LLC,

                              Defendant.

-----------------------------------------------------------X
TA OPERATING LLC,
                              Third Party Plaintiff,


            - against -

PRIME, INC.,
                              Third Party Defendant.

-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Defendant TA Operating LLC ("TA") moves for summary judgment of all claims asserted by Plaintiff in its complaint.  Plaintiff Royal Sun Alliance Insurance PLC ("RSA") moves for partial summary judgment on the issue of damages.  Third-party Defendant Prime, Inc. ("Prime") moves for summary judgment in its favor on TA's claim against Prime for contribution.

## BACKGROUND

      In 2007, Johnson and Johnson Sales and Logistics Company, LLC, a subsidiary of Johnson & Johnson ("J&J"), whose insurer was Plaintiff Royal Sun Alliance Insurance, PLC ("RSA"), entered into a Motor Carrier Agreement with third-party Defendant Prime, Inc.  (Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1

Statement") at ¶ 2.)[1]  Pursuant to this contract, Prime agreed to transport cargo, including pharmaceuticals, tendered by companies within the J&J family of companies.  (Def.'s 56.1 Statement at ¶ 3; Pl.'s Counterstatement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Counterstatement") at ¶ 3.)

     I.     <u>The Antioch Theft</u>

On May 6, 2008, Prime driver Weston Davis picked up a load of pharmaceuticals from a JOM Pharmaceutical Services' (a subsidiary of Johnson & Johnson) distribution facility in Shepherdsville, Kentucky.   (Def.'s 56.1 Statement at ¶ 5.)  The load was scheduled for a May 7, 2008 delivery to Oncology Therapeutics Network ("OTN") located approximately 170 miles away in LaVergne, Tennessee.  (<u>Id.</u>)  J&J and Prime considered this shipment of pharmaceuticals to be a "High Value Load" ("HVL") due to its contents and their value.  (<u>Id.</u> at ¶ 5.)  As a result, Prime's transport of this load was subject to certain heightened safety procedures ("HVL Procedures") agreed to between Prime and J&J/JOM.  (<u>Id.</u>)  These procedures required drivers to 1) drive at least 200 miles before stopping; 2) use air brake locking systems while stopped; 3) maintain visual observation of the tractor and trailer at all times; and 4) never leave an HVL unattended outside of a secure yard.  (<u>Id.</u> at ¶ 7.)  These procedures were subject to the need for necessary bathroom and food stops.  (Pl.'s 56.1 Counterstatement at ¶ 7.)

Davis left the JOM facility in the afternoon of May 6 and arrived at Defendant TA's Antioch truck stop, less than 200 miles away, at approximately 6:00 p.m.  (Def.'s 56.1 Statement at ¶ 8.)  Davis parked his tractor trailer and left the tractor trailer

---

[1] All citations to the parties' Statements of Undisputed Facts Pursuant to Local Rule 56.1 are undisputed unless otherwise noted.

unattended while he walked his dog and entered TA's facility.  (Id. at ¶ 9.)  Davis did not

apply the "cuff lock" air brake locking mechanism, as required by the HVL procedures,

before leaving the tractor trailer.  (Id.)   Prime's records demonstrate that the vehicle was

left unattended in the parking lot for more than an hour.  (Pl.'s 56.1 Counterstatement at ¶

10.)  The records show that at 6:56 p.m. the ignition of the tractor was turned on,

presumably by the thieves.  (Id.)  Upon Davis's return to the parking lot, he noticed that

the tractor trailer was missing and reported the theft to Prime.  (Id.)   An eyewitness

reported that he saw the tractor trailer drive off the TA Antioch lot at approximately 6:30

p.m.  (Def.'s 56.1 Statement at ¶ 11.)

     The tractor was recovered shortly after the theft approximately six miles from the

Antioch TA.  (Id. at ¶ 12.)  The trailer was recovered thirteen months later in Tampa, FL.

(Id.)  The pharmaceuticals were never recovered.  (Id.)  The price invoiced to Ontological

Therapeutics Network for these pharmaceuticals totaled $4,127,409.60.  (Williams Decl.,

¶ 5, Ex. C.)

     II.    Jeffersonville, Ohio Theft

     On July 16, 2008, Prime drivers Jon Elam and Kathy Gordon picked up a load of

pharmaceuticals from the same JOM facility in Shepherdsville, Kentucky.  (Def.'s 56.1

Statement at ¶ 20.)  The load was scheduled for delivery the following day to

AmerisourceBergen Corp., located approximately 220 miles away in Lockbourne, Ohio.

(Id. at ¶ 21.)  This load was also designated an HVL and subject to the HVL procedures.

(Id. at ¶ 22.)  In addition, as a response to the May 2008 theft, JOM had instituted

additional HVL procedures in an effort to more effectively secure HVL load.  (Id.)  These

additional HVL procedures included a requirement that drivers remain at JOM's facility

until a time designated by JOM/J&J called the "must depart time."  (Id. at ¶ 23.)  The procedures also included a requirement for tandem or team drivers.  (Deposition of Pamela Odum, Kinney Decl., Ex. E at 31.)

The Prime drivers left the JOM facility early, in violation of the "must depart time" policy, departing at 12:30 p.m. on July 16th for a scheduled delivery 19 hours later at a location only 220 miles away, along with a tandem vehicle.  (Def.'s 56.1 Statement at ¶¶ 23-24; Pl.'s 56.1 Counterstatement at ¶¶ 23-24.)  Gordon and Elam lost contact with their tandem vehicle immediately upon leaving the facility.  (Kinney Decl., Ex. Q at 11.)  Prime's records show that Gordon and Elam arrived at the Jeffersonville TA at 5:14 p.m.  (Pl.'s 56.1 Counterstatement at ¶ 27.) The drivers parked in an "IdleAire" parking spot.  (Def.'s 56.1 Counterstatement at  ¶ 27.)  The IdleAire parking system allows drivers to park their tractor trailers without operating their engines, in exchange for a fee. (Id. at ¶ 28; Pl.'s 56.1 Statement at ¶ 28.)  Air conditioning and electric power are supplied to the cab of the tractor trailer through a ground connection.  (Def.'s 56.1 Statement at ¶ 28.)  Closed circuit TV cameras were located above the IdleAire parking spots.  (Id. at ¶ 29.)

After parking the tractor trailer, the drivers left the vehicle unattended and entered the TA facility together to use the restrooms and get drinks.  (Kinney Decl., Ex. Q at 11.)  They failed to engage the "air cuff" locking mechanism.  (Def.'s 56.1 Statement at ¶ 35.)  Upon exiting the facility Gordon realized that the truck was missing.  (Def.'s 56.1 Statement at ¶ 30.)  At 6:00 p.m., the truck was reported stolen. (Pl.'s 56.1 Counterstatement at ¶ 30.)

Shortly after the theft, two eyewitnesses reported that they saw the subject tractor trailer parked on the side of a road approximately ten miles away from the Jeffersonville

TA.  (Def.'s 56.1 Statement at ¶ 31.)  The witnesses reported that the trailer was unhitched from its tractor, attached to another tractor, and driven away.  (<u>Id.</u> at ¶ 32.)  The tractor was located two hours later, approximately six miles from the Jeffersonville TA.  (<u>Id.</u>)  The trailer was located, empty, the next day in Kentucky.  (<u>Id.</u> at ¶ 33.)  The price invoiced to Amerisource Bergen Corp. for these pharmaceuticals totaled $1,376,398.36.  (Williams Decl., ¶ 5, Ex. D.)

Law enforcement officials, Prime's Director of Security, and the experts retained in this case all suspect that the thieves of these pharmaceutical loads were professional, highly sophisticated and organized, and part of a network of several cargo theft groups operating in the United States.  (Def.'s 56.1 Statement at ¶ 46.)

III.   <u>Post-Theft Developments</u>

As a result of the thefts, Plaintiff RSA paid two insurance claims, totaling $5.5 million, and pursued subrogation against Prime.  (<u>Id.</u> at ¶ 52.)  RSA demanded the full invoice value, totaling $5.5 million, from Prime.  (<u>Id.</u> at ¶ 53.)  Prime threatened to discontinue transporting goods on behalf of J&J unless Prime's exposure was limited to $250,000 per theft pursuant to the limitation of liability provision contained within its contract with J&J and JOM.  (<u>Id.</u> at ¶ 54.)  RSA ultimately accepted a payment of $250,000 per theft from Prime.  (<u>Id.</u> at ¶ 55.)

On June 18, 2009, Plaintiff RSA filed this action against TA, asserting causes of action for negligence and breach of bailment with regard to the May and July thefts,

pursuant to Tennessee and Ohio state law, respectively.  On April 9, 2010, this Court

granted Defendant TA's motion to implead Prime with regard to the Ohio theft.[2]

## DISCUSSION

Three motions are currently pending before the court:  1) Defendant's motion for

summary judgment; 2) Plaintiff's motion for partial summary judgment on the issue of

damages; and 3) Third Party Defendant Prime's motion for summary judgment.  For the

reasons discussed below, Defendant's motion is denied in part and granted in part,

Plaintiff's motion is denied, and Third Party Defendant Prime's motion is dismissed as

moot.

I.      Defendant's Motion for Summary Judgment

On October 15, 2010, Defendant TA moved for summary judgment and dismissal

of all claims.  TA contends that it is entitled to summary judgment on Plaintiff's

negligence claims because TA never owed a duty of care to RSA's subrogors and

because Plaintiff cannot establish that any act or omission of Defendant's was a

proximate cause of injury to it or to its insured.  TA also argues that it is entitled to

summary judgment on Plaintiff's breach of bailment claim because it never had exclusive

possession of the tractor trailer, and therefore a bailment was never formed.  Plaintiff

filed a brief in opposition on November 16, 2010 contending that TA does owe its

subrogors a duty because each of the thefts was foreseeable under the applicable law, and

that under the law of Tennessee and Ohio causation is an issue of fact for the jury.  In

response to Defendant's arguments regarding the bailment claims, Plaintiff withdrew its

---

[2] TA's motion to implead Prime was denied with regard to the Tennessee theft because Tennessee has
moved away from joint and several liability to a system of pure comparative liability, thereby eliminating
any contribution claim TA might have against Prime in the event liability were to be imposed. Opinion and
Order, No. 09 Civ. 5586, ECF No. 46 at 6.

Tennessee bailment claim,[3] but contended that legitimate issues of fact exist with regard to its Ohio claim. Defendant filed a reply brief on December 7, 2010. Oral argument was held on this motion as well as the two other motions on April 8, 2011.

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a motion for summary judgment, the district court is required to resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." <u>Kessler v. Westchester County Dep't of Soc. Serv.</u>, 461 F.3d 199, 206 (2d Cir. 2006) (quoting <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001)). "A dispute about a genuine issue exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008).

B. <u>RSA's Neglience Claim – Antioch, Tennessee</u>

i. <u>Negligence Liability Under Tennessee Law</u>

In Tennessee, a defendant can be held liable in negligence where the plaintiff establishes: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. <u>Satterfield v. Breeding Insulation Co.</u>, 266 S.W.3d 347, 355 (Tenn. 2008).

---

[3] "Plaintiff has decided not to pursue its bailment claim with respect to the Antioch theft, and hereby stipulates to the dismissal of that one claim." Pl.'s Mem. in Opp. at 24.

Defendant contends that it does not owe a duty to Plaintiff's subrogors—the entities insured by RSA that bore the losses resulting from the thefts—pursuant to two theories; first, that under Tennessee law, a landowner only owes a duty to customers, not to "customers of customers;" and second, that Defendant does not have a duty to protect parties from acts that are not foreseeable.

a.   TA's Duty to RSA's Subrogors (the Cargo Owners)

Under Tennessee law,

> "a business ordinarily has no duty to protect *customers* from the criminal acts of third parties which occur on its premises…However, a duty to take reasonable steps to protect *customers* arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its *customers* on its premises are reasonably foreseeable, either generally or at some particular time."

McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 902 (Tenn. 1996) (emphasis added).  Defendant argues that because RSA's subrogor in this instance, JON, was not Defendant's customer, Defendant categorically does not owe RSA any duty under Tennessee law.

The McClung case frames the duty owed by businesses as a duty owed to customers, however, the heart of the rule is foreseeability.  Given the facts of this case, it is reasonable to extend the duty of care established in McClung to a duty on the part of truck stop owners to protect owners of cargo carried by trucks from foreseeable criminal acts of third parties. TA owns truck stops, and offers many services catering specifically to the needs of truckers, including showers, maintenance facilities, and overnight

accommodations.[4]  TA benefits from the movement of cargo-bearing trucks in and out of its facilities, and knew that in the ordinary course of business, truckers carrying potentially valuable cargo would be likely to use the stop.  TA was undoubtedly aware that the truck drivers using its facilities were being paid by the cargo's shipper or recipient, either of whom could be the cargo's owner at the time of the theft.  The truck stop owner therefore would reasonably have foreseen that a theft of cargo from its premises would injure that cargo's owner.  This situation is therefore distinguishable from an instance in which an unforeseeable trespasser is victimized on a business's property and seeks damages, but similar to the trespasser/attractive nuisance liability imposed by courts for injuries to foreseeable victims.  Moreover, TA's immediate customer, Prime, also suffered harm as a result of cargo theft; it was required to pay damages to the cargo owner in compensation for the loss, and suffered the loss of use of its truck and trailer.  Thus, Defendant TA owed a duty to RSA's subrogors so long as Defendant knew, or had reason to know, "either from what has been or should have been observed or from past experience," that criminal acts against cargo owners or truckers using its facilities were reasonably foreseeable.  McClung, 937 S.W.2d at 902.

> b.  Defendant's Duty to Protect Against Foreseeable Crimes

Defendant argues that it did not owe a duty to Plaintiff's subrogors under Tennessee law because the theft was not foreseeable, and any potential risk was outweighed by the burden that would be imposed upon Defendant in order to protect against such thefts.

---

[4] See Eagan Decl., Ex. 29; see also http://www.tatravelcenters.com/.

Tennessee law measures the duty imposed on a landowner to protect against the criminal acts of third parties by balancing several factors.  "In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm."  McClung, 937 S.W.2d at 902.  In evaluating the foreseeability of criminal acts, the McClung court noted that, "as a practical matter, the requisite degree of foresseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises."  Id.  "Immediate vicinity" has been interpreted to encompass only a defendant's property and immediately adjacent properties.  See Keaton v. Wal-Mart Stores E., L.P., No. E2008-00118-COA-R3-CV, 2009 WL 17853 at *3 (Tenn. Ct. App. 2009).   In weighing the prior instances of crime, the location, nature and extent of previous criminal activity, and their similarity, proximity or other relationship to the crime at issue are to be considered.  Id.

The parties dispute the extent of criminal history at TA's Antioch facility.  Plaintiff sets forth statistics regarding past crime at the TA Antioch facility, but also statistics regarding cargo theft in the Nashville area generally, and in the five Midwestern states adjoining Tennessee.  (Pl.'s Mem. in Opp. at 11.)  Plaintiff's quantitative evidence includes criminal incidents dating back five years prior to the incident in question.  (Id.)  Defendant argues that, in view of Tennessee law's focus on prior crimes within the "immediate vicinity" of the site in question, Plaintiff's attempt to include criminal statistics from the Nashville metropolitan area and surrounding states is misplaced.  (Def.'s Reply Mem. in Supp. at 6.)  Defendant further counters that the correct time

10

period for evaluating prior criminal incidents is eighteen months, or at maximum, three years under Tennessee precedent, and not five years as claimed by Plaintiff.  (Id. at 7.)

The Court agrees that much of Plaintiff's evidence regarding prior criminal activity is irrelevant.  Evidence of cargo theft in neighboring states or crimes that occurred five years prior to the incident is not sufficiently proximate in distance or time to the events in question to merit consideration.[5] See Z-Gem Co. v. Dollar Rent-a-Car, 406 F.Supp.2d 867, 873-874 (W.D. Tenn. 2005) (rejecting evidence of crimes within the Memphis metropolitan area rather than on or in the immediate vicinity of defendant's premises).  Nonetheless, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of fact regarding whether TA had reason to foresee the May cargo theft in view of the nature and extent of previous criminal activity at the TA Antioch site itself.

Under McClung, all evidence of past crimes is to be evaluated according to the location, nature and extent of previous criminal activity, and their similarity, proximity or other relationship to the crime at issue.  McClung, 937 S.W.2d at 902.  Defendant concedes that two trailer thefts and one vehicle theft occurred at the TA Antioch facility in the eighteen months before the theft at issue.[6]  (Pl.'s Mem. in Supp. at 3-4.)  These prior crimes occurred on the premises of the TA Antioch facility and are similar in nature

_____

[5] Much of Plaintiff's quantitative evidence regarding previous crimes is derived from records of police calls.  Calls for service are not reliable indicia of criminal activity, because they do not necessarily indicate that an actual crime occurred, or even that a sufficiently similar crime occurred.  See Deposition of Barry Wilkins (Plaintiff's expert) Kinney Reply Decl., Ex. E at 164-166.

[6] The circumstances surrounding the trailer thefts, as set forth by Defendant, are unusual.  In March of 2007, the driver of a dropped trailer that was allegedly stolen from the property initially told the police that the trailer was empty, but later recanted and informed them that it contained electronics. (Def.'s 56.1 Statement at ¶ 17.)  In the second instance, in September of 2007, a driver reported that his trailer was stolen, but the responding police found that there were inconsistencies in the driver's statements.  (Kinney Decl., Ex. X.)

to the May theft and Defendant has not put forth evidence that it took any action to prevent a recurrence of such crimes.  While evidence of two past trailer thefts and a vehicle theft is not overwhelming, it is enough to pose an issue of fact for the jury.

In addition, there is a substantial record of criminal incidents other than vehicle and trailer thefts at the TA Antioch facility during the eighteen months prior to the theft at issue, including two stolen wallets, an assault on one customer by another customer, and one instance of a TA customer vandalizing the property of another.  (Kinney Decl., Exs. KK, LL (compiling police reports and internal TA incident reports regarding crime at TA Antioch.))  While such evidence provides only limited support for the foreseeability of the theft in question, argument prior to trial should determine which of the reports should be received in evidence.  The court in McClung considered prior criminal incidents dissimilar from the crime at issue in determining the foreseeability of the crime complained of and the necessity of the owners taking some corrective security measures.  McClung, 937 S.W.2d at 904.  These criminal incidents were given weight according to their "similarity, proximity, or other relationship" to the crime at issue.  Id. at 902.  The admissibility of evidence of other types of crimes at TA Antioch will be decided, pursuant to these criteria, prior to trial.

The prior thefts of trailers and a vehicle from the site, and possibly evidence regarding other criminal activity on the premises, raise a genuine issue of fact for consideration of the jury as to whether the history of crime made this theft foreseeable and TA's possible liability

.

c.   <u>Balancing Test</u>

If the prior criminal evidence is sufficient to establish foreseeability, the law of

Tennessee requires a court to next balance the foreseeability and gravity of the harm

against the burden of protecting against it.   <u>McClung</u>, 937 S.W.2d at 902.   TA contends

that because the harm at issue is only economic, rather than involving physical violence,

the gravity is not very significant.   Defendant cites no law for the proposition that the risk

of economic harm is insufficient for the imposition of a duty of care on businesses.

Despite the fact that cargo loss is not as grave a risk as physical violence, the value of the

cargo stolen in this matter is substantial, and asserted to exceed $4 million.   The harm at

issue is substantial enough for a reasonable jury to decide that TA had a duty to provide

greater protection against such cargo thefts and should be held liable.

Turning to the burden of protecting against the theft, there is a triable issue of fact

with regard to what burden is posed by the implementation of safety measures, and

whether that burden is justified by the foreseeable risk of cargo theft.   Plaintiff points to

the additional security in place at TA's other facilities as evidence that the burden is not

substantial.   Such additional security includes exterior security guards, in place at 25-30%

of TA's facilities (<u>see</u> Sanford Dep., Eagen Decl., Ex. 8 at 149-50), and/or a ticketing

system by which a driver receives a ticket to enter and must return the ticket to exit,

which is in use at 10-15 of its facilities. (<u>Id.</u> at 82-83, 149-50; Oral Argument Tr. at 26-27

(Defendant's counsel represented at argument that a ticketing system was in place at 12

TA facilities)).   Based on TA's use of these methods to provide improved security at

other locations, the burden of implementing them is unlikely so great as to substantially

infringe on its profits.   In any event, the evidence presented regarding the burden of

added security is insufficient to demonstrate the absence of a genuine issue of fact regarding Defendant's duty to protect cargo shippers and recipients from theft on its premises.

        d.  <u>Proximate Cause</u>

Defendants also claim that it is entitled to summary judgment on Plaintiff's claim for negligence with regard to the Tennessee theft because Plaintiff cannot establish that any act or omission of the Defendant was a proximate cause in causing its injury.

Under Tennessee law, in order to hold the Defendant liable, its conduct must have been a "substantial factor" in bringing about the alleged harm.  <u>Kellner v. Budget Car and Truck Rental, Inc.</u>, 359 F.3d 399, 406 (6th Cir. 2004).  Generally the question of whether a breach proximately caused the injury are decided by the trier of facts, but "[t]hese questions become questions of law…when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion."  <u>Powell v. Gurkin</u>, No. W1999-00827-COA-R3-CV, 2000 WL 987301 at *5 (Tenn. Ct. App. July 10, 2000).

Tennessee applies a system of pure comparative negligence.  <u>McIntyre v. Balentine</u>, 833 S.W.2d 52, 56 (Tenn. 1992).  TA's liability will necessarily be limited to the extent to which its negligence is found to have been a cause in bringing about the injury.  Tennessee law requires that Defendant's negligence be a only "substantial factor," not the sole cause, of Plaintiff's injury, and the evidence presented demonstrates that there is an issue of fact as to whether the lack of feasible security measures at the Antioch TA stop was a substantial factor in the success of the theft.  <u>Kellner</u>, 359 F.3d at 406.

Defendant's motion for summary judgment with regard to Plaintiff's negligence claim pertaining to the Tennessee theft is denied.

### C.   RSA's Negligence and Bailment Claims – Jeffersonville, OH

#### i.   Negligence Liability Under Ohio Law

To state a claim for negligence, Ohio law requires: "showing of a duty, breach of that duty, and an injury proximately resulting therefrom."  Jeffers v. Olexo, 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616 (Ohio 1989).  "Because of the special relationship between a business and its customer, a business may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee."  Reitz v. May Department Stores, 66 Ohio App.3d 188, 191, 583 N.E.2d 1071, 1074 (Ohio App. 1990).  The duty to protect customers from the criminal acts of third parties does not arise, however, where the business "does not, and could not, in the exercise of ordinary care, know of a danger which causes injury to its business invitee." Id. (citing Howard v. Rogers, 19 Ohio St.2d 42, 48, 249 N.E.2d 804 (Ohio 1969)).

#### a.   Defendant's Duty to Protect Plaintiff's Subrogors

Defendant first claims, as it did in conjunction with the Tennessee theft, that it owes no duty to Plaintiff's subrogors because the subrogors were not business invitees. (Def.'s Mem. in Supp. at 9.)

Invitee is defined as "an individual rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest."  Clark v. BP Oil, No. L-04-1218, 2005 WL 681302 at *2.  While RSA's subrogors were not themselves on the property, they were paying for Defendant's invitees, Prime, to transport their cargo, and Prime was acting on behalf of RSA's subrogors' in transporting

cargo at the time they stopped at TA Jeffersonville.  RSA's subrogors conveyed a benefit to TA when they paid for Prime's drivers utilizing the Jeffersonville stop to ship the cargo.  Moreover, as discussed earlier, TA is in the business of serving interstate shippers.  It was necessarily foreseeable to TA that the truckers using its property and purchasing its fuel and other goods are acting on behalf of cargo owners and carrying potentially valuable cargo.  Therefore, RSA's subrogors were foreseeable victims of theft, and TA owes a duty to protect them from cargo thefts where such thefts are foreseeable.

### b.  The Foreseeability of the Ohio Theft

Ohio courts apply two tests to determine foreseeability in premises liability cases. The "prior similar acts" test asks "did previous experience on the premises create a duty to provide additional protection for business invitees?"  Howard v. Chattahoochie's Bar, 175 Ohio App.3d 578, 586, 888 N.E.2d 462, 468 (Ohio Ct. App. 2008).  The "totality of the circumstances" test, pursuant to which the nature of the business as well as past criminal incidents and other factors are weighed, has also been applied by Ohio courts. Krause v. Spartan Stores, Inc., 158 Ohio App.3d 304, 309-310, 815 N.E.2d 696, 699-700 (Ohio Ct. App. 2004).  The totality of the circumstances test has been held to require "somewhat overwhelming" circumstances "before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others."  Reitz, 583 N.E.2d at 1075.  The somewhat overwhelming standard requires "more than knowledge of a potential future problem based on past occurrences. It requires (1) specific knowledge of a potential future problem based on past occurrences along with (2) a substantial likelihood that such an incident would occur."  Johnson v. Spectrum of

Supportive Services, 2003 WL 21982915 at *4 (Ohio Ct. App. 2003).  Ohio courts have

found that prior criminal acts occurring within the previous three to four years of the

incident in question are potentially relevant to the foreseeability determination.  Reitz,

583, N.E.2d at 194; Hickman v. Warehouse Beer Sys., Inc., 86 Ohio App. 271, 276-77,

620 N.E.2d 949, 952-53 (Ohio Ct. App. 1993).

      If the prior similar acts test is applied, Defendant's motion prevails.  No evidence

has been presented of prior similar acts on the premises at Jeffersonville, and neither the

general manager of the TA site nor the police officer investigating the Jeffersonville theft

were aware of any prior cargo theft at the site or in the area.  (Kinney Decl., Ex. G at 30;

Ex. F at 32-33.)  Furthermore, Plaintiffs have not alleged any prior similar acts at TA

Jeffersonville.  (Pl.'s 56.1 Counterstatement at ¶ 39; Eagen Decl., Ex. 41)

      If the totality of the circumstances test is applied, the question would be closer but

the result the same.  Plaintiff has pointed to no previous incidents of cargo theft or tractor

trailer theft at the TA Jeffersonville site in the five years preceding the incident.  (Pl.'s

56.1 Counterstatement at ¶¶ 38-39.) In the eighteen months prior to the incident, there is

credible evidence of 14 incidents of criminal activity, none of which were cargo thefts or

vehicle thefts (Kinney Decl., Exs. MM, NN.)[7]  Applying the totality of the circumstances

test, the evidence as to the foreseeability of the Jeffersonville theft falls well short of

"somewhat overwhelming."  While the nature of TA's business as a truck stop serving

interstate traffic of cargo makes it more likely that one of its customers will experience

---

[7] These incidents included three gas drive-offs, two incidents of gas siphoned from customers' vehicles, one incident of voyeurism, one assault, one theft of a wallet, one incident of gambling, one incident of menacing, two occasions where customers left TA without paying for certain repair work, one incident of damage to a customer's vehicle, and one incident of gas paid for with an invalid and possibly stolen credit card.  (Kinney Decl., Exs. MM, NN, CC.)

cargo theft, the complete absence of prior similar incidents negates the possibility that TA Jeffersonville had specific knowledge of a potential future problem based on past experiences.

Application of either of the Ohio tests for determining foreseeability results in a finding that the theft at the Jeffersonville TA on July 16, 2008 was not foreseeable. Considering the complete absence of evidence of prior cargo or vehicle thefts at the location, Plaintiff has failed to show an issue of fact for a jury to determine.  Therefore, Defendant's motion for summary judgment on the negligence claim with regard to the Ohio theft is granted.

       ii.     <u>RSA's Bailment Claim</u>

Defendant also moves for summary judgment on Plaintiff's breach of bailment claim, which is asserted only with regard to the Ohio theft.  TA argues that because RSA cannot show that TA ever had exclusive possession of the cargo, no bailment was ever formed.  Plaintiff responds with two arguments.  First, that under <u>Muntasir Jasim Hadi v. The College Book Store</u>, 1985 WL 6549 (Ohio Ct. App. Feb. 26, 1985), a bailment can be created in the absence of exclusive of possession by "implied promises of security." (Pl.'s Mem. in Opp. at 25.)  Second, Plaintiff argues that because the Prime drivers paid for use of the IdleAire service at the Jeffersonville lot, a bailment was impliedly created.

In order to create a bailment under Ohio law, the Plaintiff must show "(1) the contract of bailment, (2) delivery of the bailed property to the bailee and (3) failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment." <u>Atl. Mut. Ins. Co. v. Cuttaia</u>, No. 65729, 1994 WL 385969 at *2 (Ohio Ct. App. July 21, 1994).  In the context of parking lots and garages, "whether the relationship between a

driver who offers and a parking lot operator who accepts a motor vehicle for the purpose

of parking, is that of bailor and bailee or of lessor and lessee, depends upon whether the

parking lot operator assumes control over and custody of such vehicle, or simply grants

permission to park the vehicle at a designated place upon the parking lot." <u>Travelers Ins.</u>

<u>Co. v. Pond</u>, 143 N.E.2d 189, 191 (Ohio Com. Pl. 1957) (citing <u>Agricultural Ins. Co. v.</u>

<u>Constantine</u>, 144 Ohio St. 275, 58 N.E.2d 658).  In order to make out a claim for

bailment in this context, the evidence must show that the vehicle is delivered to the

parking lot operator and left unlocked so that the operator may move the vehicle as

needed.  <u>Id</u>.  <u>See</u> <u>also</u>, <u>Bourland v. Town & Country Imports</u>, 1982 WL 5855 at *2 (Ohio

Ct. App. March 31, 1982) (holding that delivery of keys to bailee is necessary to establish

bailment).

Plaintiff has failed to show that a bailment was created in this instance.  No

evidence has been presented that custody of the truck was ever delivered to the

Jeffersonville TA or that TA employees were given the authority to move the vehicle as

needed.

Plaintiff contends that in the absence of complete delivery of the vehicle, a

bailment can still be created where "implied promises of security are made."  Plaintiff

bases this argument on <u>Muntasir Jasim Hadi</u>, 1985 WL 6549, in which a book store

required customers to leave their bags at a "book drop" while shopping.  The plaintiff's

bag was stolen from this book drop.  The case is thus easily distinguishable from the case

at bar, because the plaintiff in <u>Muntasir</u> did complete delivery of the bailed item, by

relinquishing control over it and leaving it in the hands of the book shop.  <u>Id.</u> at *3.

Plaintiff also contends that because the truck was parked in the paid IdleAire spots, a bailment was created.[8]  Paying for electrical service while parking, in the absence of any evidence that keys were delivered to TA or that TA exercised custody and control over the truck fails to establish a bailment.  Defendant's motion for summary judgment as to Plaintiff's breach of bailment claim is granted.

II.    Plaintiff's Motion for Summary Judgment on the Issue of Damages

Plaintiff moves for summary judgment on the issue of damages, on the grounds that the unrefuted evidence demonstrates the damages suffered by RSA as a result of the theft at TA's Antioch Tennessee facility.[9]

Plaintiff's main brief in support of its motion relied on the law of damages set forth by the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, however Plaintiff's complaint does not assert claims under the Carmack Amendment.  Plaintiff asserts state law tort claims, and under the applicable law of Tennessee, the amount of damages to be awarded in a tort action is a question for the fact finder.  Beaty v. McGraw, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998).

Moreover, the facts regarding damages are not undisputed, and it appears that there might be a genuine issue of fact barring an entry of summary judgment as to damages.  Defendant asserts that there is an issue regarding whether RSA represents the

---

[8] In support of this theory, Plaintiff points to a statement on IdleAire's website that IdleAire promises "improved safety and security."  The quote to which Plaintiff is referring appears on a web page listing the benefits IdleAire brings to the communities in which it is installed, a list that also includes "cleaner air" and "more jobs."  (Eagan Decl., Ex. 58.) It is not at all clear that "improved safety and security" refers to improved safety and security for cargo or constituted an implied promise to provide improved safety and security for cargo.

[9] Plaintiff moved for partial summary judgment on the issue of damages relating to all of its claims; however because the claim for negligence in conjunction with the Tennessee TA stop theft is all that survives, Plaintiff's motion will be considered only with regard to that claim.

interests of OTN, or represents the interests of a J&J entity, and if so, which one.  (Def.'s Mem. in Opp. at 11-13.)  It contends that the identity of RSA's subrogor in relation to this theft is significant because of the fact that OTN never paid for this shipment of pharmaceuticals, and therefore if RSA is representing OTN's interests, it might not be entitled to any recovery.  TA further argues that there is conflicting documentary evidence regarding the amount of the loss, including a series of four subrogation receipts and a question of fact as to which receipt properly reflects the amount of the loss suffered by whatever party RSA is representing.  (Oral Arg. Tr. at 93-94.)

 In view of the apparent dispute between the parties as to the facts surrounding damages, and applying the general rule that damages in a tort action are to be determined by a jury, Plaintiff's motion for partial summary judgment on the issue of damages is denied.

III.    Prime, Inc.'s Motion for Summary Judgment

Third Party Defendant Prime moves for summary judgment of TA's cross-claim against it for contribution with regard to the Ohio theft.  Prime's motion is mooted by the Court's decision in this opinion to award summary judgment in favor of TA on the Ohio negligence claim.  TA's third-party complaint against Prime is accordingly dismissed.

**CONCLUSION**

Defendant TA's motion for summary judgment is granted in part and denied in part.  Its motion pertaining to Plaintiff's claim of negligence in conjunction with the Antioch, Tennessee theft is denied, because there are genuine issues of fact with regard to Defendant's negligence in conjunction with that theft.  Defendant's motions pertaining to the negligence and bailment claims pertaining to the Jeffersonville, Ohio theft are

granted, because no genuine issue of fact remains for a jury to consider and it is entitled

to judgment as a matter of law.  Plaintiff's motion for partial summary judgment on the

issue of damages is denied.  Third Party Defendant Prime's motion for summary

judgment on TA's claim for contribution on the Ohio theft is denied as moot in view of

the Court's grant of summary judgment in favor of Defendant on the Ohio claim.  With

regard to the Tennessee claim, TA has no third party claim against Prime because TA is

only potentially liable for its comparative negligence in relation to the theft.


IT IS SO ORDERED.

Dated:  New York, New York
        April 20, 2011


                                            Robert P. Patterson, Jr.

                                                    U.S.D.J.



Copies of this order were faxed to:


*Counsel for Plaintiff:*

David Thomas Maloof
Thomas Mark Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue, Suite 190
Rye, NY 10580
(914) 921-1200
Fax: (914) 921-1023

*Counsel for Defendant:*

Justin Nolan Kinney
Coughlin Duffy LLP (NYC)
88 Pine Street, 28th Floor
New York, NY 10005
(212)-483-0105
Fax: (212)-480-3899

*Counsel for Third Party Defendant:*

Edward Farman
Schindel, Farman, Lipsius, Gardner & Rabinovich, L.L.P.
14 Penn Plaza
Suite 500
New York, NY 10122
(212) 563-1710
Fax: (212) 695-6602